1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REYCEL PEREZ-MARTINEZ,

                              Petitioner,

          v.

SUPERINTENDENT MARGARET
GILBERT,

                              Respondent.

No. 3:15-cv-05950-BHS-TLF

REPORT AND RECOMMENDATION
Noted for: June 7, 2019

Petitioner Reycel Perez-Martinez was convicted by jury verdict of assault in the first degree with a firearm enhancement. Dkt. 13, Relevant State Court Record, Exhibit 1 ("Exhibit 1"). Perez-Martinez raises three grounds for habeas corpus relief in support of his 28 U.S.C. § 2254 petition. Amended Petition, Dkt. 24; Petitioner's Supplemental Memorandum, Dkt. 58. He contends that he received ineffective assistance of counsel in violation of the Sixth Amendment, was denied his right to counsel under the Sixth Amendment, and received fundamentally unfair trial due to prosecutorial misconduct.

For the reasons below, the undersigned recommends that the Court deny the petition and dismiss the action with prejudice and without an evidentiary hearing. However, the undersigned recommends granting a certificate of appealability.

REPORT AND RECOMMENDATION - 1

1

**STATEMENT OF FACTS**

2

3    1.  <u>Underlying Facts and Trial</u>

4        The Washington State Court of Appeals, Division II, summarized the facts of Mr. Perez-

5    Martinez's case, in relevant part:

6        Perez–Martinez and Luna-Claro were "best friend[s]" in Cuba before each
         separately immigrated to this country. II Trial (Mar. 12, 2012) at 136. After

7        arriving in Washington, Luna-Claro worked as a maintenance worker, but he
         supplemented his legitimate income by selling illegal drugs, becoming a

8        distributor for a drug cartel in 2010. After reconnecting with Luna-Claro, Perez-
         Martinez began asking him for assistance in obtaining work in the drug trade.

9        Luna-Claro gave Perez-Martinez the name and information of his contact in the
         cartel, which led to a meeting between Perez-Martinez and members of the cartel

10       and attempts to train Perez-Martinez as a drug courier.

11       A few months after Luna-Claro introduced Perez-Martinez to his cartel contact,

12       law enforcement officials seized five kilograms of cocaine, valued at
         approximately $150,000, that the cartel had sent to Luna-Claro. Unfortunately for

13       Luna-Claro, the cartel considered him liable for payment on the shipment
         regardless whether he received it. Luna-Claro managed to pay some $30,000, but

14       he could not pay the balance of the debt.

15       Not long after Luna-Claro's difficulties with the cartel began, Perez-Martinez

16       showed up at his door with an associate. [Footnote 1: Perez-Martinez testified at
         trial that he did not know the man's surname and knew him only as "Arnaldo"

17       despite travelling from Las Vegas to Vancouver with him. IV Trial (Mar. 14,
         2012) at 534-36.] At trial, Luna-Claro and Perez-Martinez presented starkly

18       different accounts of what transpired after Perez-Martinez entered Luna-Claro's

19       house.

20       According to Luna-Claro, he, Perez-Martinez, and Perez-Martinez's associate
         went into his garage, where they began "talking about business, about drugs." II

21       Trial (Mar. 12, 2012) at 144-45. Luna-Claro sat down in a chair, and Perez-

22       Martinez, unexpectedly and without provocation, pulled out a pistol and shot him
         in the abdomen from a distance of four or five feet. While Luna-Claro lay on the

23       ground, Perez-Martinez walked up to him and pulled the trigger to shoot him
         again, but the gun did not fire. Perez-Martinez then kicked Luna-Claro several

24       times, turning to leave when Luna-Claro's wife came to the garage to investigate
         the shot and yelled for him to get out. At trial, Luna-Claro opined that the cartel

25       had sent his best friend to kill him because of his unpaid debt.

26

REPORT AND RECOMMENDATION - 2

According to Perez-Martinez, he arrived at Luna-Claro's house to confront him about a storage locker Luna-Claro had opened in his name, ostensibly so that Perez-Martinez would have a local bill to establish residency in Washington. Perez-Martinez was upset about the locker because he believed Luna-Claro was using it for his drug trade. After Perez-Martinez entered Luna-Claro's house with his unknown associate, they all went to the garage where they discussed the dispute. Luna-Claro became angry at Perez-Martinez, swore at him, and then pulled a gun from his waistband "very slow[ly]." IV Trial (Mar. 14, 2012) at 553-54. Perez-Martinez lunged at Luna-Claro, and the two struggled for the gun, which discharged during the struggle. Perez-Martinez, who testified he was "in fear for [his] life," later explained that nerve damage in his hand might have caused him to fire the gun without knowing that he had pulled the trigger. IV Trial (Mar. 14, 2012) at 555-56. After the shot, Luna-Claro asked Perez–Martinez to take the gun and flee because the sound might draw a police response. Perez-Martinez complied and later disposed of the gun off a local freeway.

The State charged Perez-Martinez with first degree attempted murder and first degree assault, seeking enhanced penalties for each charge due to his use of a firearm.

Before trial, Perez-Martinez moved for new appointed counsel. When asked why he wanted new counsel, Perez-Martinez stated that his attorney was "not doing a good job for" him, that his attorney worked for the prosecution, and that his attorney said that he had killed Luna-Claro. I Motions (Dec. 12, 2011) at 5-7. The trial court explained to Perez-Martinez that his attorney did not work for the prosecution and that, since the State had not charged him with murder, he must have misheard or misunderstood what his attorney had said. The court denied the motion for new counsel.

When the court again considered the issue several months later, Perez-Martinez stated that he wanted new counsel because his attorney had found no other witnesses to help defend him and his attorney had misled him into believing the State would present some kind of plea deal. He then stated that he simply did not trust his attorney. The trial court noted that, given the facts the State had alleged, it seemed unlikely that Perez-Martinez's attorney could find other witnesses, because he could not give the attorney the information necessary to find Arnaldo. Concerning the plea deal, the State informed the court that it had offered a plea, but that Perez-Martinez had rejected it. Perez-Martinez then again refused the offer in open court. Finally, the court attempted to allow Perez-Martinez to speak in private with his attorney about the offer, but Perez-Martinez refused, saying he would not speak with counsel. Again, the court declined to appoint Perez-Martinez new counsel.

At trial, the State presented Luna-Claro and witnesses whose testimony corroborated his account: Police officers testified that their repeated searches of Luna-Claro's house disclosed no evidence that he possessed a gun. Officers also

REPORT AND RECOMMENDATION - 3

testified that searches of the garage disclosed one spent and one live round. One officer testified that this evidence was consistent with Luna-Claro's story that Perez-Martinez attempted to shoot him twice, but that only one bullet fired. Another officer testified that, based on the lack of gunshot residue on Luna-Claro's clothes, he was not shot at close range, as in a struggle for control of a gun, but from a distance, as Luna-Claro testified. Luna-Claro's neighbors testified that Perez–Martinez approached the house and left in different directions, suggesting a plan to avoid identification and capture.

Perez-Martinez testified in his own defense. Given Perez-Martinez's testimony about his fear for his life, the trial court determined it would instruct the jury on self-defense over the State's objections.

During closing arguments, the State argued that the evidence indicated that Perez-Martinez had fabricated his self-defense story. It also challenged whether Perez-Martinez had acted in self-defense, even if the jury accepted his version of events, claiming that Perez-Martinez had stated that he accidentally shot Luna-Claro instead of shooting him in self-defense. [Footnote 2: The prosecutor's argument stated in part: You're going to get a self-defense instruction the Court told you in your jury instructions. The interesting thing about that is he's never claimed that it was self-defense. He said that what happened on that day was not that he—that the gun was ever pointed at him, but that he lunged for the gun once he slowly saw it coming out in the middle of an argument. He was never faced with imminent danger. He was arguing with his friend, which he himself said is something you can do. He's not claiming self-defense. He's claiming it was an accident. He's claiming it was an accident because his hand has lost feeling. V Jury Trial & Sentencing Hearing (Mar. 15, 2012) at 651-52. Perez-Martinez does not cite to it, but the State repeated the argument that he was claiming an accident as opposed to self-defense a few minutes later.] Finally, the State told the jury that Luna-Claro had been "open" with them and had "told the truth" based on his admission of his criminal activities and the corroborating physical evidence. V Jury Trial & Sentencing Hearing (Mar. 15, 2012) at 689, 693.

The jury found Perez-Martinez not guilty of attempted murder, but convicted him of first degree assault with a firearm enhancement. . . .

Exhibit 2, Opinion, *State v. Perez-Martinez*, Court of Appeals Cause No. 43384-2-II, *2-6.

2. State Court Procedural History

Perez-Martinez appealed his conviction to the Washington Court of Appeals. Exhibits 3-5. The Washington Court of Appeals affirmed the conviction. Exhibit 2.

REPORT AND RECOMMENDATION - 4

Perez-Martinez sought review by the Washington Supreme Court. Exhibit 11. The Washington Supreme Court denied review. Exhibit 12. The Washington Court of Appeals issued its mandate on August 22, 2014. Exhibit 13.

Perez-Martinez then filed a personal restraint petition (PRP) in the Washington Court of Appeals. Exhibits 14-16. The Washington Court of Appeals transferred the PRP to the Washington Supreme Court as a successive petition. Exhibit 17. Unpublished Order, Court of Appeals Cause No. 47784-0-II. The Washington Supreme Court denied the PRP. Exhibit 21.

3. <u>Federal Court Procedural History</u>

Perez-Martinez filed his petition for writ of habeas corpus on December 31, 2015. Dkt. 6. This Court granted a stay, however, so that Perez-Martinez could exhaust his state-court remedies. Dkt. 16 (Report and Recommendation); Dkt. 17 (Order adopting Report and Recommendation, granting stay). After doing so, Perez-Martinez was permitted to amend his petition, Dkt. 24 (Amended Petition), and the State responded, Dkt. 33. The Court dismissed two claims in the petition as unexhausted and appointed counsel for Perez-Martinez. Dkt. 35 (Report and Recommendation); Dkt. 37 (Order adopting Report and Recommendation); Dkt. 38 (Order granting motion to appoint counsel). Perez-Martinez and the State submitted supplemental briefing on his remaining claims.

In his supplemental brief, Perez-Martinez alleges three grounds for habeas relief: that he was unconstitutionally denied his right to counsel, that the government committed prosecutorial misconduct, violating his right to a fair trial, and that he received ineffective assistance of counsel. Dkt. 58, p. 6.

REPORT AND RECOMMENDATION - 5

## EXHAUSTION OF STATE COURT REMEDIES

Exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A petitioner must present a claim in "each appropriate state court"—that is, at each level of state review—to alert the state "to the federal nature of the claim" and give it the "opportunity to pass upon and correct" alleged violations of the petitioner's federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted).

Perez-Martinez has exhausted his state court remedies for each of the claims addressed in his supplemental brief. *See* Exhibits 3, 5, 19.

## STANDARD OF REVIEW

A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be an unreasonable application of Supreme Court

precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

This Court presumes that the state courts' factual determinations are "correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254 (e)(1)). And this Court will not overturn on factual grounds a decision that the state courts adjudicated on the merits and based on a factual determination unless that decision was "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* (citing 28 U.S.C. § 2254(d)(2)).

When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

Here, for most of the grounds Perez-Martinez raises, the "last reasoned decision" is the opinion of the Washington Court of Appeals, Division II, on direct appeal. *See* Exhibit 2. In its ruling denying discretionary review of Perez-Martinez's personal restraint petition, the Supreme Court of the State of Washington addressed two of those grounds on the merits. Exhibit 21. With respect to those issues—prosecutorial misconduct based on improper vouching for a witness and ineffective assistance of counsel in failing to object to prosecutorial misconduct—the Washington Supreme Court's PRP ruling was the "last reasoned decision." *See Ignacio*, 360 F.3d at 1055.

Finally, as discussed below, Perez-Martinez's claim of ineffective assistance of counsel should be reviewed de novo because the state courts did not address it and he has shown cause for his failure to raise it. *See Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc).

REPORT AND RECOMMENDATION - 7

**DISCUSSION**

1.    <u>Ineffective Assistance of Counsel</u>

Petitioner asserts that he received ineffective assistance of counsel at two stages of the proceedings in state trial court: in plea negotiations and at trial. These claims are addressed separately below. The Court should conclude that, under a de novo standard of review, petitioner has not shown that he received ineffective assistance of counsel at either stage.

A.    <u>Claims Not Raised in Petition</u>

As a threshold matter, the State asserts that petitioner's supplemental brief in support of his habeas petition, Dkt. 58, raises ineffective assistance claims that were not raised in the amended habeas petition, Dkt. 24, and are therefore barred under the statute of limitations for habeas claims, 28 U.S.C. § 2244(d).

Rule 2(c) of the Rules Governing § 2254 Cases requires that a petition "specify all the grounds for relief available to the petitioner." 28 U.S.C.A. foll. § 2254. The purpose of this requirement is to provide the government with notice and an opportunity to respond to each ground for relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). "A Traverse is not the proper pleading to raise additional grounds for relief." *Id.* Rather, "they should be presented in an amended petition or . . . a statement of additional grounds. Then the State can answer and the action can proceed." *Id.*

The Court should consider the bases for an ineffective assistance of counsel claim that the petitioner raises in his supplemental brief (Dkt. 58). Assuming—without deciding—that those bases are new "grounds for relief" under Rule 2(c), the State nonetheless had notice and an opportunity to respond to them. The State could, and did, respond to all aspects of petitioner's ineffective assistance of counsel claim in its response to petitioner's supplemental brief. *See* Dkt.

REPORT AND RECOMMENDATION - 8

59. This distinguishes the State from respondents in the two cases the State relies on. *See Moore v. Chrones*, 687 F. Supp. 2d 1005, 1032 n.17 (C.D. Cal. 2010) (declining to consider aspects of ineffective assistance of counsel claim that petitioner raised for first time in Traverse); *Cacoperdo*, 37 F.3d at 507 (holding that claims raised for the first time in Traverse, not petition, were not cognizable on appeal).

     B.    De Novo Standard of Review

The undersigned also agrees with the parties that petitioner's ineffective assistance of counsel claim (with the exception of the aspect of that claim that the state courts did consider, which is addressed below in subsection F) should be reviewed de novo.

Normally, in considering a claim for habeas-corpus relief based on ineffective assistance of counsel, this Court applies a "doubly deferential" standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA), asking whether the state court adjudication on ineffective assistance of counsel was *itself* unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). But the deferential AEDPA standard applies only when the state court adjudicated that claim "on the merits." *James v. Ryan*, 733 F.3d 911, 914 (9th Cir. 2013) (citing 28 U.S.C. § 2254(d)).

In addition, where the state court did not adjudicate the ineffective assistance claim "on the merits," a claim is often barred from habeas review as procedurally defaulted because the petitioner failed to exhaust it in state court. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In some circumstances, however, a petitioner's procedural default can be excused where the petitioner shows cause. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural

REPORT AND RECOMMENDATION - 9

default of a claim of ineffective assistance at trial."). To establish cause under *Martinez v. Ryan*, a petitioner must show that

> (1) the underlying ineffective assistance of trial counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the [post-conviction relief (PCR)] proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc) (citing *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

Here, the AEDPA standard of review does not apply to petitioner's ineffective assistance of counsel claim because the Washington state courts did not consider that claim on the merits. *See* Exhibit 2, Opinion, *State v. Perez-Martinez*, Court of Appeals Cause No. 43384-2-II; Exhibit 12, Order, *State v. Perez-Martinez*, Supreme Court Cause No. 90069-8; Exhibit 21, Order, *In re Perez-Martinez*, Supreme Court Cause No. 92870-3.

Moreover, the State concedes that the *Dickens* conditions are met here. *See* Response Brief, Dkt. 28, p. 23. The Court should agree that petitioner's lack of counsel in his state proceedings was sufficient "cause" for his failure to raise his ineffective assistance claim. Accordingly, de novo review of that claim is appropriate. *See Dickens*, 740 F.3d at 1319.

C.     Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough*, 540 U.S. at 4. To show that this right was denied, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the first of these prongs, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

REPORT AND RECOMMENDATION - 10

Courts apply a "strong presumption" that the performance of counsel "falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel has "wide latitude in deciding how best to represent a criminal defendant" and "in making tactical decisions." *Id.* at 688-89. Courts evaluate "[t]he reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986).

Under the second prong, the defendant must "affirmatively prove prejudice" in the form of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. In weighing prejudice, a reviewing court "must consider the totality of the evidence before the judge or jury." *Id.* at 695. Because the petitioner must satisfy both prongs of *Strickland*, a court need not address both prongs if the petitioner makes an insufficient showing of one prong. *Strickland*, 466 U.S. at 697.

Here, petitioner claims he received ineffective assistance at two distinct stages: in plea negotiations and at trial.

D.    New Evidence in Support of Ineffective Assistance of Counsel Claim

In support of his habeas petition, petitioner presents several exhibits that were not part of the record before the state courts. Dkt. 58, Exhibits C-J. These include a declaration by John Strait, an Emeritus Professor of Law at Seattle University and expert in professional responsibility, that details how defense counsel's actions in resisting petitioner's request for him to withdraw violated his ethical obligations under Washington's Rules of Professional Conduct (RPC). *See* Declaration of John Strait, Dkt. 58, Exhibit F, p. 8.

The State asserts that 28 U.S.C. § 2254(e)(2) bars petitioner from expanding the record to include new exhibits, including Professor Strait's declaration. However, the United States Court

of Appeals for the Ninth Circuit has held that § 2254(e)(2) does not prevent a petitioner who

claims, under *Martinez*, that he had cause for procedurally defaulting in developing the factual

basis for his claim in federal district court. *Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013).

The court further observed that "even with respect to the underlying trial-counsel IAC 'claim,'

given that the reason for the hearing is the alleged ineffectiveness of both trial and PCR counsel,

it makes little sense to apply § 2254(e)(2)." *Id.* Accordingly, the Court should consider the newly

submitted evidence in considering plaintiff's underlying ineffective assistance of counsel claim.

      E.    <u>Analysis: Ineffective Assistance During Plea Negotiations</u>

In his first ineffective-assistance claim, petitioner asserts that he received ineffective

assistance in negotiating a plea deal before trial. Dkt. 58, p. 35. The Court should reject this

argument.

Petitioner's claim that his counsel was deficient, under the first *Strickland* prong, can be

summarized as follows: Petitioner's trial counsel, David Kurtz, "failed to develop a good

relationship" with him "by rarely visiting him." Dkt. 58, p. 35. Because of this, petitioner moved

at the first trial-readiness hearing on December 12, 2011, to have Mr. Kurtz replaced. *See* Exhibit

23, p. 4. Instead of supporting petitioner's motion, Mr. Kurtz cooperated with the prosecutor to

defeat it by arguing to the trial court that there was no basis for withdrawal. *See id.*, pp. 4-8.

After that hearing, Mr. Kurtz did not improve the relationship, rarely visiting petitioner. Dkt. 58,

p. 35 (citing Dkt. 58, Exhibits C, D, E). Throughout the pretrial process, Mr. Kurtz did not

provide petitioner with discovery that he was entitled to see. Petitioner asserts that these

circumstances amounted to a "complete breakdown of communications" during plea

negotiations, a critical stage of the proceedings. *See* Dkt. 58, p. 35.

REPORT AND RECOMMENDATION - 12

In some circumstances, an "irreconcilable conflict" between defendant and attorney can amount to ineffective assistance of counsel. For example, the petitioner in *Frazer v. United States* showed that his appointed trial attorney called him vicious racial slurs and "'said he hopes I get life,'" leading to a complete breakdown in communication. 18 F.3d 778, 783-85 (9th Cir. 1994); *see Ellis v. Harrison*, 891 F.3d 1160, 1166 (9th Cir. 2018) (holding that petitioner must make showing similar to Frazer's). But not all attorney-client conflicts are significant enough to amount to deficient performance. Criminal defendants do not have a Sixth Amendment right to a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 3-4 (1983). "Misunderstandings and dissatisfaction over the course of plea negotiations are not tantamount to a collapse of the attorney-client relationship." *United States v. Murray*, 238 F.3d 432 (9th Cir. 2000).

In *Daniels v. Woodford*, the Ninth Circuit held that trial counsel's failure to resolve a communication conflict with the petitioner, together with their related failures in investigating possible defenses based on the petitioner's mental illness, amounted to constitutionally deficient performance. 428 F.3d 1181, 1201-06. Because of the petitioner's mistrust of the attorneys, there was a "complete breakdown in communication." *Id.* at 1201. Because the attorneys were "unable to effectively communicate with" the petitioner, they lacked "a valuable source of information in preparing for his defense." *Id.* at 1201. For example, although one of the attorney's believed the petitioner's "best hope" was to give his account by testifying at trial, the attorney did not press the petitioner to testify or explain to him that his testimony was critical. *Id.* at 1202.

The right to effective assistance of counsel also extends to plea negotiations and sentencing. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). For example, defense counsel provides ineffective assistance when it allows a plea offer to expire without advising the defendant about

1   the offer and allowing the defendant to consider it. *Missouri v. Frye*, 566 U.S. 134, 145 (2012);

2   *U.S. v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) ("'[T]he attorney has the duty to advise the

3   defendant of the available options and possible consequences' and failure to do so constitutes

4   ineffective assistance of counsel." [quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.

5   1981)]). In addition, counsel's performance is deficient in "fail[ing] to advise a client to enter a

6   plea bargain when it is clearly in the client's best interest." *United States v. Leonti*, 326 F.3d

7   1111, 1117 (9th Cir. 2003).

8           Here, Petitioner alleges that he lacked competent representation in three ways, which

9   amount to constitutionally deficient counsel during plea negotiations: first, that petitioner and his

10  attorney had a "complete breakdown" in communicating; second, that his attorney unethically

11  resisted petitioner's motion that he withdraw; and third, that his attorney unethically disclosed

12  certain aspects of petitioner's plea deliberations.

13          As discussed above, the State asserts that petitioner waived this claim because he did not

14  include it in the amended petition. The State also responds that the petitioner's representation by

15  his trial counsel, Mr. Kurtz, was not deficient because petitioner fails to identify any incorrect or

16  incompetent advice that Mr. Kurtz provided.

17          Although the State's argument may define deficient performance too narrowly, the State

18  is nonetheless correct that petitioner has not shown deficient performance here. Petitioner has not

19  rebutted the strong presumption "that counsel's representation was within the wide range of

20  reasonable professional assistance" at the pleading stage. *See Harrington v. Richter*, 562 U.S. 86,

21  104 (2011) (quotation marks and citation omitted). The Court "begin[s] with the premise that

22  'under the circumstances, the challenged action[s] might be considered sound trial strategy.'"

23  *Pinholster*, 563 U.S. at 191 (quoting *Strickland*, 466 U.S. at 689).

REPORT AND RECOMMENDATION - 14

1    The jail visitation and interpreter records that petitioner submits in support of his petition

2    do not support his claim that there was a "complete breakdown in communications" between

3    petitioner and trial counsel. *See* Dkt. 58, Exhibits C, D, E. Those records indicate that counsel

4    visited petitioner roughly once per month in the eight months before his trial and that those visits

5    totaled 256 minutes. *Id.* Counsel was accompanied by an interpreter at two of those visits. *Id.*

6    The record also shows petitioner actually refusing to speak with his attorney at one point during

7    a pretrial hearing. Exhibit 23, p. 34 ("I don't want to talk to him . . ."; "Okay. That's fine. . . . I

8    can deal with it.").

9    While not ideal, this amount of contact does not show that petitioner's "counsel was not

10   functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*,

11   466 U.S. at 686. Petitioner does not point to any authority holding that this amount of contact

12   demonstrates a breakdown of constitutional dimensions. *See* Dkt. 58, p. 35; *see also Plumlee v.*

13   *Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) (finding no Supreme Court case holding

14   "that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual

15   conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or

16   distrust"). And unlike in *Daniels*, petitioner's communication problems with counsel did not

17   result in a complete lack of preparation for trial. *See* 428 F.3d at 1201-06.

18   Nor does petitioner identify any sources of actual conflict with his attorney—let alone a

19   level of conflict akin to the racial animus shown in *Frazer*. *See* 18 F.3d at 783-85.

20   Next, petitioner has not shown that his attorney was constitutionally deficient in failing to

21   provide him with discovery before trial.

22   In asserting that counsel "failed to develop a good relationship" with him during the

23   pretrial stage, petitioner contends that "counsel was refusing to provide him with discovery

REPORT AND RECOMMENDATION - 15

1   throughout this time." Dkt. 58, p. 35. Petitioner elsewhere contends that Mr. Kurtz violated his

2   obligations under RPCs 1.3 and 1.4, to provide diligent representation and keep his client

3   reasonably informed. Dkt. 58, pp. 22-23; *see* Exhibit F, Strait Decl., pp. 11-12.[1] Petitioner asserts

4   that although Superior Court Rule 4.7(h)(3) permits defense counsel to provide copies of

5   materials to a defendant "after making appropriate redactions" and receiving approval from the

6   prosecutor or the Court, Mr. Kurtz did not comply with petitioner's request to view "all

7   discovery." Dkt. 58, pp. 22-23; *see* Exhibit F, Strait Decl., pp. 11-12.

8

9        The only specific evidence that defendant contends his attorney improperly withheld is

10  the police report on the shooting incident.[2] Petitioner presents a letter he wrote to Mr. Kurtz,

11  dated December 23, 2011, in which he requested redacted copies of his police reports and

12  alluded generally to having requested those reports from Mr. Kurtz several times before.[3] Dkt.

13  58, Exhibit I. (As discussed above, the Court may consider the newly submitted evidence,

14  including this exhibit, in addressing petitioner's ineffective assistance of counsel claim. *See*

15

16  _____

17  [1] Professor Strait stated:

18          The conduct of defense counsel in ex parte communications with the court, not directed to his
            client, limiting access of his client to discovery, apparently for fear that they would be shown to a
19          suspected third party jailhouse lawyer who defense counsel blamed for petitioner's desire to
            terminate him, resulted in more limited access to discovery than provided by court rule for
20          defendant. *See* Washington CrR 4.7(h)(3).

21  Dkt. 58, Exhibit F, p. 11. Professor Strait continued by opining that Mr. Kurtz's appearance ex parte before the
    judge "to obtain an order limiting discovery . . . was directly adverse to his client's interests and instructions."
22  Professor Strait concluded that Mr. Kurtz violated RPC 1.3, his duty of diligence to his client, and RPC 1.4, his
    obligation to keep his client "reasonably informed" and "promptly comply with requests for information. Id. at 11-
    12.

23  [2] Petitioner states in the declaration he submitted with his petition that "[t]hroughout the entirety of my trial, I did
    not trust my defense attorney. He refused to give me complete redacted copies of my discovery, even though I
24  requested them very early on in the case. I did not understand this and could not trust him because of this. He never
    told me that he asked the judge for permission not to give me discovery." Dkt. 58, Exhibit G.

25  [3] The letter states: "I have asked for my police reports several times now in person and you still have not given them
    to me! I know it's my 'right' to have my redacted police reports in my possession to study, so I can make informed
26  and intelligent decisions on my case." Dkt. 58, Exhibit I.

REPORT AND RECOMMENDATION - 16

1    *Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013).) Earlier, petitioner made a similar

2    assertion in his December 1, 2011, motion for new counsel. *See* Dkt. 58, Exhibit B.

3          Petitioner's assertions that discovery was improperly withheld do not rebut the "strong

4    presumption" that his trial counsel acted reasonably. As petitioner points out, a defense attorney

5    has a professional responsibility to "promptly comply with reasonable requests for information"

6    and to "explain a matter to the extent reasonably necessary to permit the client to make informed

7    decisions regarding the representation." *See* Washington RPC 1.6; Strait Decl., Dkt. 58, Exhibit

8    F, pp. 11-12. But a violation of ethics rules does not by itself demonstrate constitutionally

9    deficient representation. *United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009); *see*

10   *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("Though the standard for counsel's performance is

11   not determined solely by reference to codified standards of professional practice, these standards

12   can be important guides.").

13         Moreover, petitioner does not provide sufficient evidence for the Court to conclude that

14   Mr. Kurtz failed to keep him adequately informed during the pretrial stage. Petitioner

15   acknowledges that Mr. Kurtz did share the police report with him the week before trial. Dkt. 58,

16   p. 12; *see* Exhibit 26, pp. 591-92. (Petitioner calls this a "cynical attempt to gain [his] trust." Dkt.

17   58, p. 12.) Neither Professor Strait's declaration, petitioner's declaration, nor petitioner's brief

18   identify any other specific evidence that Mr. Kurtz withheld from him. In the absence of such

19   evidence, and given the amount of time Mr. Kurtz spent with petitioner over eight visits and the

20   competent and active defense that the transcript shows Mr. Kurtz provided during trial, the Court

21   must indulge a "strong presumption" that Mr. Kurtz provided adequate counsel. *See Strickland*,

22   466 U.S. at 689.

REPORT AND RECOMMENDATION - 17

Nor does petitioner make an argument for why the police reports, in particular, were necessary for him to decide whether to agree to a plea deal. Petitioner cites the general principle that "a given trial decision cannot be 'strategic' unless the attorney conducts a reasonable investigation to inform that decision," citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2013). Dkt. 60, p. 22 n.10. But he cites no support for his assertion that this principle means an attorney is ineffective in failing to provide a defendant with certain evidence before trial. *See id.* Petitioner's *ipse dixit* on this point—that "[t]here can be no reasonable debate about this," Dkt. 60, p. 22—is not well taken.

Regarding counsel's refusal to withdraw after petitioner moved to substitute counsel, petitioner submitted a motion in which he alleged that his counsel, Mr. Kurtz, was working with the prosecutors against his interests and had incorrectly told him that the alleged victim of his assault had died. Dkt. 58, Exhibit B. He repeated these reasons at the December 12, 2011, hearing. Exhibit 23, pp. 5-6. Professor Strait, an expert in professional responsibility, opines in his declaration that Mr. Kurtz's actions in arguing against petitioner's request for him to withdraw violated Mr. Kurtz's ethical obligations under Washington's Rules of Professional Conduct. *See* Strait Decl., Dkt. 58, Exhibit F, p. 8.

Petitioner asks the Court to conclude that, at the December 12 hearing, Mr. Kurtz "formed an alliance with the prosecutor to defeat his client's motion and misled the court into believing that no 'legitimate grounds' for the discharge existed," and that Mr. Kurtz "refused to yield his appointment even when it would have been clear to any principled attorney it was in everyone's best interest for him to do so." Dkt. 58, pp. 35-36.

Yet the transcript of the state court proceeding does not show that Mr. Kurtz "formed an alliance with the prosecutor" or that he misled the trial court. The trial court was faced with a

REPORT AND RECOMMENDATION - 18

written motion that was submitted around the same time as several nearly identical motions and based partly on inaccurate information. *See* Exhibit 23, pp. 5-9 (trial court judge observed that motion incorrectly asserted that no private investigator had been appointed and defense counsel was working for prosecutor). The judge considered (1) statements from Mr. Kurtz about his conversations with petitioner, indicating that petitioner's understanding that defense counsel told him the victim had died was based on a miscommunication; (2) statements from the prosecutor and defense counsel that a fellow inmate drafted petitioner's motion and was, in defense counsel's words, "preying on" petitioner and other prisoners with limited English, (3) the trial judge's observation, having seen an "identical" motion in another case, (4) the judge's finding that defense counsel was "not working for the prosecution," and (5) the judge's observation that the motion contained "a number of things that in fact are not true and accurate." Exhibit 23, pp. 6-9. The judge concluded, "I've heard or seen nothing that would indicate . . . that there's any basis for the claims and allegations made by Mr. Perez-Martinez" in his motion to substitute counsel. *Id.*, p. 8. The judge also noted that substituting counsel would mean starting the pretrial process over, causing petitioner "to remain in custody a fair amount longer." *Id.*, p. 8.

Petitioner has not shown that his trial counsel's performance was deficient where, based on the circumstances noted by the trial court, counsel was acting in petitioner's interests in declining to withdraw.

Because petitioner has not shown that his attorney performed deficiently during plea negotiations, the Court need not decide whether, under *Lafler v. Cooper*, petitioner can show he was prejudiced. *See* 566 U.S. 156, 165 (2012); *McGowan v. Burt*, 788 F.3d 510, 517 (6th Cir. 2015) ("Absent a showing of deficient performance as well as a causal connection between the

REPORT AND RECOMMENDATION - 19

deficiency and the defendant's decision to reject a plea offer, *Lafler* 's recognition that the resulting longer sentence amounted to *Strickland* prejudice is of little significance.").

  If the Court reaches the prejudice inquiry, however, it should decide that petitioner has not shown a reasonable probability that, but for his counsel's deficient performance, he would have accepted a plea deal. Petitioner had multiple opportunities to accept a plea offer of eight years and instead rejected it; his conclusory allegation that he would have accepted the deal if he had trusted his attorney is not sufficient to show a "reasonable probability" that he would have accepted the offer if not for the alleged ineffective assistance, where in fact he repeatedly rejected that offer. *See* Exhibit 23, pp. 24-34; Dkt. 58, Exhibit G.

  Likewise, petitioner has not shown prejudice from his attorney's disclosure of aspects of petitioner's plea deliberations. At the March 8, 2012, pretrial hearing, Mr. Kurtz disclosed details about his conversations with petitioner regarding the eight-year plea offer from the State. Professor Strait opined in his declaration that Mr. Kurtz's disclosures breached his professional duty of confidentiality. Dkt. 58, Exhibit F, p. 9 (citing RPC 1.6(a)). But petitioner cites no authority finding constitutionally deficient performance in similar circumstances, where there is no evidence that defense counsel provided incorrect advice or inaccurate information to a defendant. Further, even assuming Mr. Kurtz breached his ethical duty during the hearing and this breach amounted to constitutionally deficient performance, petitioner has not shown prejudice: he presents no evidence that he would have accepted the same offer that he rejected multiple times if Mr. Kurtz had not disclosed facts about petitioner's plea deliberations in court.

  F. <u>Analysis: Ineffective Assistance at Trial</u>

  Petitioner also contends he received ineffective assistance at several points during trial. The Court should reject this argument, as well.

REPORT AND RECOMMENDATION - 20

Frist, petitioner contends that his attorney was ineffective in failing to object to prosecutorial misconduct in closing arguments. Dkt. 58, p. 38. Petitioner asserts that the prosecutor committed misconduct in three ways: by misstating the law and facts regarding self-defense; by vouching for a key witness (the victim, Eric Luna-Claro); and by misleading the jury that Mr. Luna-Claro did not have a history of violence, which would be relevant to petitioner's self-defense claim.

Unlike petitioner's other ineffective assistance of counsel claims, this allegation was considered by the Washington state courts. In the last reasoned decision on the topic, the Washington Supreme Court held:

> Mr. Perez-Martinez next argues that his trial counsel was ineffective in not objecting to the claimed prosecutorial misconduct addressed above. To prevail on this argument, Mr. Perez-Martinez must show both that counsel's conduct fell below a professional standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). As indicated, the prosecutor committed no objectionable misconduct in relation to the testimony of the victim's wife. As to the other claimed instances of misconduct, *it is not necessary to address whether defense counsel should have objected because Mr. Perez-Martinez does not show that if counsel had objected there is a reasonable probability the outcome would have been different.*

Exhibit 21, pp. 2-3 (emphasis added).

Petitioner has not attempted to show that this holding was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Accordingly, dismissal is appropriate for petitioner's claim of ineffective assistance for failure to object to prosecutorial misconduct.

Second, petitioner contends that several other failures by his attorney amounted to deficient performance at trial: not introducing evidence of Luna-Claro's violent past; not seeking to introduce evidence that Luna-Claro claimed "he was arrested with $3,000 that reportedly disappeared"; failing to impeach Luna-Claro by introducing his statement that his gun permit

REPORT AND RECOMMENDATION - 21

was a "concealed weapon" permit; and not demanding that the State produce that permit as evidence. Dkt. 58, pp. 18-19 & n.12.

None of these instances, together or separately, demonstrates ineffective assistance. The test is not whether another lawyer would have acted differently with the benefit of hindsight, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 689; *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill."). Mr. Kurtz stopped questioning Luna-Claro about past violent acts when the trial court sustained an objection by the State, Exhibit 24, pp. 160-62. He was not ineffective in abiding by the trial court's evidentiary ruling.

Further, the evidentiary value of Luna-Claro stating he was arrested with $3,000 that disappeared is unclear: while petitioner contends that it shows either that Luna-Claro was lying or that the police handled the investigation sloppily, Mr. Kurtz attempted to introduce the evidence for that purpose. After the State objected, Mr. Kurtz had legitimate tactical reasons for conceding on this peripheral issue. *See* Exhibit 24, pp. 194-95; *see Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (noting that tactical decision by counsel with which defendant later disagrees is not a basis for ineffective assistance claim).

And while petitioner contends that the characterization of Luna-Claro's gun permit as a "concealed weapon" permit, and the physical permit itself, are evidence that Mr. Kurtz could have used to petitioner's "extreme advantage," he does not explain how this is true. The jury heard multiple times that Luna-Claro had a gun permit, Exhibit 24, pp. 134, 200-02, 221 and Exhibit 26, pp. 501-03, including during closing arguments, Exhibit 27, pp. 689-90. This was

REPORT AND RECOMMENDATION - 22

1    evidence that the jury, if it disbelieved Luna-Claro, could interpret as suggesting that the gun that

2    shot Luna-Claro belonged to him and thus that he initiated the violence. If the specific

3    designation of the permit would have additional relevance, petitioner does not articulate it.

4        The sole case that petitioner cites in support of his argument that these errors at trial

5    constitute ineffective assistance is distinguishable: The district court in *Baldwin v. Adams* held

6    that defense counsel was ineffective for (among other acts) not objecting to a closing statement

7    in which the prosecutor urged the jury to convict the defendant in order to protect the community

8    by deterring future law-breaking and preserving civil order. 899 F. Supp. 2d 889 (N.D. Cal.

9

10   2012). This case lacks any analogous prejudicial error by counsel.

11       Accordingly, petitioner has not shown that his attorney's performance during trial was

12   constitutionally deficient. The Court need not address whether there is a reasonable probability

13   that, without the alleged deficiencies, the trial would have had a different outcome.

14   2.    Denial of Right to Conflict-Free Counsel

15       Petitioner next contends that he was denied the right to conflict-free counsel guaranteed

16   by the Sixth Amendment.

17

18       A.    State Court of Appeals Analysis

19       Petitioner raised this claim in his direct appeal, Exhibit 3 (Brief of Appellant), and the

20   Washington Court of Appeals held that the trial court did not violate petitioner's Sixth

21   Amendment rights in denying his motion to substitute counsel. Exhibit 2, pp. 6-12. The court

22   addressed petitioner's argument using three factors applied by both Washington and federal

23   courts: "the extent of the conflict, the adequacy of the trial court's inquiry into the conflict, and

24   the timeliness of the motion to substitute counsel." *Id.*, p. 7 (citing *In re Pers. Restraint of*

25

26

REPORT AND RECOMMENDATION - 23

1   *Stension*, 142 Wn.2d 710, 724 (2001); *United States v. Moore*, 159 F.3d 1154, 1158-61 (9th Cir.

2   1998)).

3       Under the first factor, the court held, "[t]he nature and extent of the claimed conflict does

4   not rise to the level justifying the appointment of new counsel." Exhibit 2, p. 8. It explained:

5
        First, Perez-Martinez's relationship with his attorney was never marked by the
6       type of outright quarrels, threats of violence, or threats to render deficient
        performance that indicate an attorney cannot represent the client in a diligent
7       manner. *See Stenson,* 142 Wn.2d at 724-25. Perez-Martinez's mistaken beliefs
        that his counsel worked for the prosecutor and that his counsel had stated that he
8       had killed Luna-Claro do not show misconduct by his attorney. Perez-Martinez's
        other grievances with his attorney are the types of loss of confidence or trust that
9       do not justify the appointment of new counsel under the case law above. While
        Perez-Martinez's refusal to speak with his counsel in some instances does create
10      concern about a breakdown in the adversarial process, "[i]t is well settled that a
        defendant is not entitled to demand a reassignment of counsel on the basis of a
11      breakdown in communications where he simply refuses to cooperate with his
        attorneys." *Schaller,* 143 Wn. App. at 271.
12
        Second, the effect of any conflict on the representation Perez-Martinez received
13      does not justify new counsel. To determine if an irreconcilable conflict resulted in
        the complete denial of counsel, we scrutinize the record and consider evaluations
14      of the attorney's performance by the trial court and defendant. *Stenson,* 142
        Wn.2d at 728-30. The record contains no evidence that Perez-Martinez received
15      "anything approaching inadequate representation" or that his "right to effective
        assistance of counsel was jeopardized by his continued representation" by his
16      attorney. *Schaller,* 143 Wn. App. at 270. Reflecting this, the trial court noted that
        Perez-Martinez's attorney had done "a very good job at [Perez–Martinez's]
17      defense." IV Trial (Mar. 14, 2012) at 545. Perez-Martinez himself echoed this
        assessment, stating, "I've seen really during this trial [that his attorney] has done a
18      good job"; indeed, Perez-Martinez apologized to his attorney for the allegations
        he made in requesting new counsel after agreeing that his attorney had
19      represented him well. IV Trial (Mar. 14, 2012) at 545. Because he fails to show
        that his difficulties with his attorney affected his representation at trial, Perez-
20      Martinez must show prejudice to prevail on this factor, and he does not even
        make an argument in this regard.
21
        The first *Stenson* factor therefore weighs in favor of affirming the trial court's
22      denial of Perez-Martinez's motion. Perez-Martinez fails to show a conflict arising
        from grounds we accept as bases for appointing new counsel and the
23      representation he received rebuts any concerns that the adversarial process
        guaranteed by the Sixth Amendment's right to counsel broke down.
24

25

26

REPORT AND RECOMMENDATION - 24

Under the second factor, the state court observed that, in contending the trial court must "privately question a defendant and ask specific and targeted questions to determine whether new counsel is warranted," Perez-Martinez relied on cases from the Ninth Circuit, which do not bind the state court. Exhibit 2, pp. 9-10 (internal quotation marks omitted).

The court found that the Washington Supreme Court has held that a "trial court makes an adequate inquiry into 'the merits of [the defendant's] complaint' by affording the defendant 'the opportunity to explain the reason[s] for [his or her] dissatisfaction with counsel' and questioning counsel about the 'merits of [the] complaint.'" *Id.*, p. 10 (quoting *State v. Varga*, 151 Wn.2d 179, 201 (2004)). Applying this rule, the court found that "the trial court offered Perez-Martinez two separate opportunities to explain why he wanted new counsel, and engaged in lengthy discussions about the merits of his requests. The trial court also explored the issue with his counsel during those same two hearings." The court concluded that "[t]he trial court conducted an adequate inquiry." *Id.*

Finally, under the third factor, the state court held that petitioner's motion was untimely. The court reasoned:

> Perez-Martinez makes two arguments on this point. First, he alleges that he made a timely motion that the trial court rejected over impermissible concerns about its trial schedule. He cites [*U.S. v.*] *Nguyen*, which held that even a motion for substituting counsel made the day of trial was timely where denied for impermissible reasons. 262 F.3d at 1003. However, the trial court's consideration of the delay involved with the appointment of new counsel did not revolve around a desire to keep to its own trial schedule. Instead, its consideration of the delay focused on its attempt to honor all of Perez-Martinez's Sixth Amendment rights, including his right to a speedy trial.
>
> Second, Perez-Martinez argues the trial court made inconsistent rulings because, after denying his motion for new counsel, it allowed his attorney a continuance to prepare. Again, while the federal cases Perez-Martinez cites provide persuasive authority, we are bound by our Supreme Court's decisions. Our Supreme Court

REPORT AND RECOMMENDATION - 25

has held that the delay resulting from the substitution of counsel can weigh against the defendant in consideration of the third *Stenson* factor. 142 Wn.2d at 732. Here, the trial court noted that the time necessary to allow a new attorney to familiarize himself or herself with the case would have been extensive and reached long past any continuance it would grant his current attorney. This delay shows Perez-Martinez's motion to be untimely under the third *Stenson* factor. 142 Wn.2d at 732.

Exhibit 2, p. 11.

B.     Standard of Review under AEDPA

Petitioner does not challenge the state court's legal analysis of the three factors for determining whether the trial court violated his Sixth Amendment right to conflict-free counsel when it denied his motions to substitute. Instead, petitioner bases his challenge on an assertion that the state court based its holding on several unreasonable determinations of fact, entitling him to habeas relief under 28 U.S.C. § 2254(d)(2). Dkt. 58, p. 42.

Under 28 U.S.C. § 2254(d)(2), a habeas corpus petition may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). With respect to determinations of demeanor and credibility, however, this Court "can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The Ninth Circuit has explained the deferential standard for reviewing fact findings:

In reviewing substantive reasonableness of a state court's findings, this Court must be particularly deferential to our state-court colleagues. For example, in concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. *Cf. Lockyer*,

REPORT AND RECOMMENDATION - 26

538 U.S. at 75, 123 S.Ct. 1166. Similarly, before we can determine that the state-court fact finding process is defective in some material way, or perhaps non-existent, we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

C.     Constructive Denial of Counsel Standard

Petitioner was represented by appointed counsel at trial. He cannot assert a constitutional right to choose his own appointed counsel: indigent defendants have no constitutional right to have a specific lawyer appointed by the court and paid for by the public. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

Nonetheless, the denial of a motion to substitute counsel may implicate a defendant's Sixth Amendment right to counsel. *Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (noting that "[t]he test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed").

The court considers three factors in determining whether, due to a conflict with counsel, a petitioner was constructively denied counsel at trial: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel. *Daniels*, 428 F.3d at 1197-98.

REPORT AND RECOMMENDATION - 27

As noted above, the Supreme Court has rejected the argument that "the Sixth Amendment guarantees a 'meaningful relationship' between accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see Daniels*, 428 F.3d at 1197.

> In *Morris*, an indigent defendant had a unilateral falling out with his attorney caused not by any identifiable objective misconduct by the attorney, but by (1) Morris's dissatisfaction with a switch from one public defender to another, (2) Morris's opinion that the new public defender had not had enough time to prepare for trial, and (3) by the second public defender's assessment that Morris had no "defense to [the] charges." *See* 461 U.S. at 8, 103 S.Ct. at 1614. Because of this unilateral falling out, Morris refused to participate in his own defense. In affirming the denial by the district court of Morris's petition for a writ of habeas corpus, the Court rejected Morris's claim that a defendant has the right to a certain "rapport" with his attorney.

*Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994).

The Ninth Circuit distinguished *Morris* in *Frazer v. United States*. 18 F.3d 778, 783 (9th Cir. 1994). The court held that, unlike in *Morris*, the petitioner's trial counsel had allegedly engaged in "abhorrent, confrontational behavior," calling him vicious racial slurs, saying to the petitioner he "'hopes I get life,'" and threating that he would deny the petitioner effective assistance. *Id.* at 783-84. In *Morris*, in contrast, the petitioner "had no cognizable or legitimate reason to refuse to cooperate with his counsel or to participate in the trial."

D.   Analysis

Here, petitioner is incorrect that the state court made "'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *See Juan H.*, 408 F.3d at 1270 n.8.

As petitioner concedes, the Court may consider in this analysis only the evidence that was before the state court. 28 U.S.C. § 2254(d)(2); *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004); Dkt. 60, p. 21 n.1.Therefore, the Court cannot consider the evidence petitioner

REPORT AND RECOMMENDATION - 28

presents in support of his petition, including his declaration regarding his conflict with his attorney. *See* Dkt. 58, Exhibits C-J.

Petitioner asserts that the state court made several unreasonable determinations of fact that affected its denial-of-conflict-free-counsel analysis. However, the record that was before the state court does not support petitioner's claims.

   a.  <u>Lack of Counsel at Hearing</u>

First, petitioner asserts that his appointed counsel, Mr. Kurtz, and the prosecutor "joined forces" to defeat his motion to substitute counsel. Dkt. 58, p. 43. He contends that the state court "wholly ignored" that he "had no counsel advocating on his behalf at the December 12, 2011 motion hearing." Dkt. 58, p. 43. Consequently, he contends, the factual determinations underpinning the state court's conclusion that he was not denied counsel were objectively unreasonable. *Id.*

Contrary to petitioner's assertion, however, the state court did consider the December 12, 2011, motion hearing and how it reflected on petitioner's relationship with his attorney. *See* Exhibit 2, p. 8 (addressing petitioner's statements that he believed his counsel worked with prosecutor and had told him victim had died; and noting that petitioner's "refusal to speak with his counsel in some instances does create concern about a breakdown in the adversarial process . . ."), 10 (noting that trial court gave petitioner "two separate opportunities to explain why he wanted new counsel . . ."). The court based its conclusion that petitioner was not denied his Sixth Amendment right to counsel on legal standards from state and federal case law. Exhibit 2, pp. 6-12. Petitioner cannot circumvent the AEDPA standard of review by re-characterizing the state court's legal determination as a "failure to consider . . . evidence." *See* Dkt. 58, p. 44.

REPORT AND RECOMMENDATION - 29

b.    Extent of the Conflict

Second, petitioner alleges that the state court unreasonably determined the magnitude of his conflict with counsel when it applied the first factor for determining whether he was constructively denied counsel. *See* Exhibit 2, p. 7 (citing *Stenson*, 142 Wn.2d at 724; *Moore*, 159 F.3d at 1158-61).

The state court found that petitioner's relationship with Mr. Kurtz was not "marked by . . . outright quarrels, threats of violence, or threats to render deficient performance"; that petitioner held "mistaken beliefs that his counsel worked for the prosecutor and that his counsel had stated that he had killed Luna-Claro"; and that petitioner's other grievances with Mr. Kurtz amounted only to a "loss of confidence or trust," manifesting in a "refusal to speak with his counsel in some instances." Exhibit 2, p. 8.

Petitioner's assertions to the contrary do not show that trial court's holding was based on unreasonable determination of facts. *See* Dkt. 58, p. 47. Petitioner asserts that his refusal to cooperate with counsel was not "in some instances" as the trial court found, "but constant." *Id.* He bases this assertion on: statements at both pretrial readiness hearings; petitioner's two written motions requesting substitution of counsel; letters; a bar complaint; lack of communication during the plea discussion in the December 12 hearing; and Mr. Kurtz's statement—"Okay. That's fine . . . I can deal with it"—in response to petitioner's statement at one point in that hearing that he did not want to talk with Mr. Kurtz, Exhibit 23, p. 34.

Two of these items are not properly before the Court. Petitioner attached to his brief in support of his habeas petition a December 23, 2011, letter from petitioner to his attorney requesting redacted discovery that, he stated, his attorney was refusing to provide him. Dkt. 58, Exhibit I. This letter was not part of the record before the trial court and accordingly is not

REPORT AND RECOMMENDATION - 30

properly considered in this analysis. *See* Dkt. 60, p. 21 n.1 (conceding that petitioner's Exhibits C-J should not be considered in addressing denial-of-counsel claim). In addition, the trial transcript contains a reference to a bar complaint by petitioner against his attorney, but the complaint itself does not appear to be in the record. *See* Exhibit 26, pp. 591-92.

More importantly, petitioner's summary of the record is selective. Petitioner relies primarily on the statements that he and his counsel made at the December 12 hearing on petitioner's motion to substitute counsel, as well as at a March 8, 2012, hearing just before trial. Dkt. 58, pp. 47-48. However, petitioner overstates the extent to which these statements show that he had a conflict with his attorney.

The following exchanges occurred at the December 12 hearing:

Perez-Martinez told the trial court that he wanted new counsel to replace Mr. Kurtz "[b]ecause I think he's not doing a good job for me." Exhibit 23, p. 5. When the judge asked him to explain, he stated, "I think he's working for the prosecutors also." *Id.*, p. 6. He added: "when [Mr. Kurtz] presented the case, . . . [h]e said that I killed somebody, and that's not true." *Id.*

The judge stated that he was sure Mr. Kurtz was not working for the prosecutor. *Id.* After listening to petitioner he concluded, "my guess would be that there's some level of kind of misunderstanding or miscommunication." Exhibit 23, p. 6. Mr. Kurtz speculated that there had been an interpretation error when he told petitioner that petitioner was charged with attempted murder; he denied that he told petitioner that petitioner had killed someone. *Id.*, pp. 6-7.

The prosecutor and judge then exchanged information about recent cases they had worked on in which nearly identical motions were filed. The prosecutor speculated that petitioner was one of several inmates with limited English speaking skills whom another inmate "was preying upon" by pressuring to file a boilerplate motion for new counsel. Exhibit 23, pp 7-8.

REPORT AND RECOMMENDATION - 31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The judge observed that substituting counsel would create a substantial delay, noting that petitioner "is going to have to remain in custody a fair amount longer because of this being a substantial case, the new attorney having to get on board." Exhibit 23, p. 8. He also noted that the arguments in petitioner's motion for substitution were either false or unsubstantiated. *Id.* He concluded he had not heard a legitimate reason for granting the motion. *Id.*, pp. 8-9.

Petitioner again asked the trial court to substitute counsel in a hearing on March 8, 2012, one business day before trial. The judge observed that it was "the eve of trial," and said the issue "should have been brought forward some time ago." Exhibit 23, pp. 22. The judge asked petitioner to explain his motion, and petitioner stated that his counsel had not obtained witnesses to testify in his defense and had not obtained a counter-offer in plea bargaining. *Id.*, pp. 22-23.

The judge interjected that he did not want to hear about plea bargaining. *Id.*, p. 23. Mr. Kurtz explained, nonetheless, details about his negotiations with the prosecutor. *Id.*, pp. 24, 26. When Mr. Kurtz stated that petitioner had received and rejected a counter-offer, the judge asked petitioner if he wanted to meet with Mr. Kurtz to discuss whether to accept the offer. *Id.*, pp. 27-28. Petitioner indicated he did not want the offer. *Id.*, p. 27. He added, of Mr. Kurtz: "I just don't feel like I can trust him. I don't trust him. . . . I wouldn't like to go to trial with him." *Id.*, p. 30.

The judge found that petitioner had not shown a basis to remove Mr. Kurtz as appointed counsel. Exhibit 23, p. 30. He found that petitioner's main complaint about Mr. Kurtz's performance was the lack of defense witnesses; the judge noted that, based on the record, the only witnesses to the crime were petitioner, the victim, and—perhaps—one other person, whom neither party had identified or located. *Id.*, pp. 30-32.

REPORT AND RECOMMENDATION - 32

1    The judge denied petitioner's motion, finding no basis to remove Mr. Kurtz, noting he

2    had confidence in Mr. Kurtz's competence, skills, and effort on behalf of petitioner, and noting it

3    was "the eve of trial" and "[t]his is an old case." Exhibit 23, pp. 32-33.

4        The Washington Court of Appeals' conclusion regarding the magnitude of the conflict

5    between petitioner and his attorney is not unreasonable in light of these exchanges. As that court

6    noted, the record contains no indication of "outright quarrels, threats of violence, or threats to

7    render deficient performance." Exhibit 2, p. 8. The state appellate court could reasonably

8    conclude on the record before it that, although petitioner refused to speak to his attorney at least

9    once during the pretrial hearings, that refusal did not indicate a level of conflict that would

10    indicate petitioner was constructively denied counsel. *See Daniels v. Woodford*, 428 F.3d 1181,

11    1198 (9th Cir. 2005)(substitution not warranted where "defendant's refusal to cooperate

12    demonstrates 'unreasonable contumacy'").

13        Supporting this conclusion, the evidence before the state courts contrasts with evidence

14    that the Ninth Circuit found to show "irreconcilable conflict" or "complete breakdown[s] in

15    communication" in the cases petitioner cites. Unlike in *Daniels v. Woodford*, the trial court here

16    did not fail to acknowledge a "clear conflict" between petitioner and the public defender's office

17    for over nine months; nor did it remove an attorney whom petitioner trusted for no valid reason

18    and replace him with "a former prosecutor, with no criminal defense experience and only three

19    months to prepare." *See* 428 F.3d 1181, 1196-1200 (9th Cir. 2005). And unlike in *Carlson v.*

20    *Jess*, trial counsel did not agree with the petitioner that a "complete breakdown in

21    communications" had occurred and he should withdraw. *See* 526 F.3d 1018, 1023 (7th Cir.

22    2008). Moreover, the Seventh Circuit distinguished that case—where counsel was retained—

REPORT AND RECOMMENDATION - 33

from cases regarding an indigent defendant's right to choose appointed counsel. *Id.* at 1027.

Here, Mr. Kurtz was appointed as counsel for plaintiff.

c.    Appropriate Inquiry by Trial Court

Petitioner also challenges the state appellate court's finding that "[t]he trial court

conducted an adequate inquiry" by providing petitioner with "two separate opportunities to

explain why he wanted new counsel, and engag[ing] in lengthy discussions about the merits of

his requests," in addition to "explor[ing] the issue with his counsel during those same two

hearings." *See* Exhibit 2, p. 10.

Petitioner contends that this was an unreasonable determination because the discussions

did not address several complaints he had, including that counsel was "refusing to provide him

with discovery, rarely visited him, and didn't listen to him when he did." Dkt. 58, pp. 48-50. He

adds that the discussions were "far from 'lengthy,'" as petitioner contributed just 42 words, in

response to two question from the trial court in the first hearing, and that the second hearing was

similarly circumscribed. *Id.*

While the trial court's inquiry was relatively brief, the federal court should not conclude,

under a standard of review that requires "particular[ ] deferen[ce] to our state court colleagues,"

that the Court of Appeals' finding was unreasonable. *Maddox*, 366 F.3d at 1000. The state court

could reasonably conclude that petitioner was given multiple opportunities to speak and, while

not verbose, was able to present his case for substitute counsel to the court. Nothing in the

transcripts of the hearings suggests that petitioner was prevented from speaking. *See* Exhibit 23.

When asked by the trial court at both hearings, petitioner did not raise the issues he now

asserts regarding his attorney's failure to provide him with discovery, visit him, or listen to him.

*See id.*, pp. 6, 30. Because the court should not be "convinced that an appellate panel, applying

REPORT AND RECOMMENDATION - 34

1   the normal standards of appellate review, could not reasonably conclude that the finding is

2   supported by the record," the court should not conclude that the state court based its finding

3   regarding the trial court's inquiry on an unreasonable determination of fact. *See Taylor v.*

4   *Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

5           d.      <u>Timeliness of Motion to Substitute</u>

6           The same is true with respect to the state appellate court's finding that "the trial court's

7   consideration of the delay involved with the appointment of new counsel did not revolve around

8   a desire to keep to its own trial schedule" but, rather, that the trial court "focused on its attempt

9   to honor all of Perez-Martinez's Sixth Amendment rights, including his right to a speedy trial."

10  Exhibit 2, p. 11.

11          A state appellate court's "determination of what the trial judge found" is itself a fact

12  finding entitled to deference under AEDPA. *Parker v. Dugger*, 498 U.S. 308, 320 (1991); *see*

13  *also Brown v. Sanders*, 546 U.S. 212 (2006) (modifying *Parker*, holding deference appropriate

14  for state appellate court's fact finding on meaning of ambiguous trial court order as long as

15  finding has support in the record); *Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004)

16  (state appellate court findings interpreting an unclear or ambiguous trial court ruling are entitled

17  to same presumption of correctness afforded trial court findings).

18          Here, the trial court explained, in part, its ruling on petitioner's motion to substitute

19  counsel at the December 12 hearing: "The main thing that I guess is driving my decision in this

20  case is, one, I mean to start over and having a new attorney added, Mr. Perez-Martinez is going

21  to have to remain in custody a fair amount longer because of this being a substantial case, the

22  new attorney having to get on board." Exhibit 23, p. 8. When petitioner made a similar request at

23  the March 8, 2012, hearing, the trial court noted that that it was "the eve of trial," and the issue

REPORT AND RECOMMENDATION - 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

"should have been brought forward some time ago." *Id.*, p. 22. After discussing the bases that

petitioner stated for his motion—including that petitioner was dissatisfied with the plea offer he

had received, that he thought Mr. Kurtz was working with the prosecution, and that Mr. Kurtz

had not found witnesses to testify for him—the trial court decided to deny it. *Id.*, pp. 22-33. In

doing so, the trial court stated

> I have confidence that Mr. Kurtz will do the best job that he can for you. That's
> what he does in these cases. He's definitely competent and has the skills
> necessary to handle this case. That's why the County has contracted with him to
> be appointed in these cases. So on the eve of trial, the state has the right to have
> this case resolved. It's been pending for a while. This is an old case. St this point
> we're planning on going to trial on Monday on this. . . . So I'm denying the
> request to remove Mr. Kurtz.

Exhibit 23, pp. 32-33.

Petitioner is correct in pointing out that the trial court seemed to imply a concern at the

second hearing with the State's "right to have this case resolved." Exhibit 23, p. 33. In the full

context of the hearing, however, it is clear that the trial court's focus was on the reasons

petitioner was asserting for wanting new appointed counsel, and that the trial court found those

reasons not to be well founded. *Id.*, pp. 22-33.

At the first hearing, the trial court was explicit in its concern with prolonging petitioner's

stay in custody. *Id.*, p. 8. The appellate court's conclusion from these hearings—that the trial

court did not deny petitioner's motions based on the needs of the trial court's own trial schedule,

but based on a number of concerns that included petitioner's Sixth Amendment rights—is a

reasonable one. *See* Exhibit 2, p. 11.

In short, the state court's findings were "not so '[im]plausible' . . . that they produce a

'definite and firm conviction that a mistake has been committed.'" *McClure v. Thompson*, 323

REPORT AND RECOMMENDATION - 36

1    F.3d 1233, 1244 (9th Cir. 2003) (quoting *Easley*, 532 U.S. at 242). Therefore, those findings do

2    not provide a basis for reversal under § 2254(d)(2).

3    3.    <u>Denial of Fair Trial due to Prosecutorial Misconduct</u>

4

5          Finally, Mr. Perez-Martinez alleges several instances of prosecutorial misconduct at trial.

6    He asserts that this misconduct, in aggregate, rendered his trial fundamentally unfair, violating

7    his Sixth Amendment right to a fair trial. A reviewing court asks whether the prosecutor's

8    comments or actions "so infected the trial with unfairness as to make the resulting conviction a

9    denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

10          Petitioner asserts that the prosecutor repeatedly mischaracterized the law regarding self-

11   defense and misstated the evidence regarding Luna-Claro's violent past in closing argument.

12   Dkt. 58, pp. 53-56. He asserts that under a correct application of the three factors the Supreme

13   Court set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986), the state court of appeals should

14   have concluded that his fair-trial right was violated and he was entitled to a new trial. *Id.*

15

16         Petitioner has not shown he is entitled to habeas relief.

17

18   A.    <u>State Court of Appeals Analysis</u>

19         On direct appeal, the state appellate court rejected petitioner's prosecutorial misconduct

20   arguments. Exhibit 2, pp. 12-20.

21         First, the state Court of Appeals held that the prosecutor did not improperly shift the

22   burden of proof onto Perez-Martinez when she asserted that "there was no evidence of self-

23   defense." The court applied *State v. McCreven*, 170 Wn. App. 444 (2012), *review denied,* 176

24   Wn.2d 1015 (2013), reasoning:

25          The prosecutor here did not suggest that Perez-Martinez had a duty to prove self-
            defense or that the State did not bear the burden of disproving self-defense

26

REPORT AND RECOMMENDATION - 37

beyond a reasonable doubt until he did so. Instead, the prosecutor attacked the fit of the evidence in the record with Perez-Martinez's theory of self-defense in order to shoulder the State's burden of disproving self-defense beyond a reasonable doubt. A prosecutor may permissibly argue that the evidence does not support the defense's theory of events. [Washington case citations omitted.] There was no impropriety with this argument.

Exhibit 2, p. 14.

Second, the Court of Appeals found that the prosecutor did act improperly in stating in closing: "He's not claiming self-defense. He's claiming it was an accident." *See* Exhibit 27, pp. 651-52. The court held that under the circumstances of the case, "self-defense is not mutually exclusive with accident." Exhibit 2, p. 14. It concluded that the comments were improper because "at best the prosecutor's argument misstated the law of self-defense and, at worst, invited the jury to disregard the trial court's instructions on self-defense." *Id.*, p. 15 (citing *State v. Asaeli,* 150 Wn. App. 543, 594-96 (2009)). The court held, however, that because Perez-Martinez did not object to the argument and an instruction to the jury could have cured any prejudice from it, Perez-Martinez waived the issue. *Id.*, pp. 15-17.

Third, the Court of Appeals found that the prosecutor improperly vouched for Luna-Claro's testimony by telling "the jury that Luna-Claro had been open and honest with them." Exhibit 2, pp. 17-18. But the court held that Perez-Martinez waived this issue, as well, by failing to object where a curative instruction could have addressed the argument's impropriety. *Id.*, p. 18.

B.    Analysis

Petitioner has not shown any basis for habeas corpus relief based on prosecutorial misconduct.

REPORT AND RECOMMENDATION - 38

Where a state court has denied federal claims "based on an adequate and independent state procedural rule," those claims are procedurally defaulted and the federal habeas court may not review them. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Procedural default may occur if the petitioner fails to comply with a state procedural rule that required him to object contemporaneously to preserve an issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *see also Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) (holding that petitioner procedurally defaulted on prosecutorial misconduct claim where state appellate court found petitioner waived issue by failing to object to improper remarks at trial).

Here, the Court of Appeal's determination that petitioner had not preserved objections to the various alleged instances of prosecutorial misconduct was an independent and adequate state ground for denying those claims. Under Washington law, a defendant's failure to object to a prosecutor's misconduct is an independent procedural bar to consideration of the issue on appeal, unless the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Swan*, 114 Wn.2d 613, 661 (1990); *State v. Emery*, 174 Wn.2d 741, 760-61 (2012). The Court of Appeal explicitly relied on this basis. *See* Exhibit 2, pp. 12-20 (citing *Emery*, 174 Wn.2d at 760, and *Swan*, 114 Wn.2d at 661-62); *see also State v. Boast*, 87 Wn.2d 447, 451 (1976) (holding that "an objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review").

Exceptions to the "adequate and independent state grounds" rule exist when the petitioner can show cause for the default and actual prejudice from the alleged violation of federal law, or if the petitioner can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner does not

REPORT AND RECOMMENDATION - 39

attempt to show cause and actual prejudice here, nor that a fundamental miscarriage of justice would result from a failure to consider his prosecutorial misconduct claim.

Accordingly, the procedural default doctrine bars petitioner's claim that he received an unfair trial because the prosecutor committed misconduct by misstating the law and evidence regarding self-defense and improperly vouching for Luna-Claro. *See Fairbank*, 650 F.3d at 1257.

Petitioner contends that the state court's decision is not entitled to deference under AEDPA because it "failed to identify the controlling legal principle"— three factors that the Supreme Court considered in *Darden*, 477 U.S. at 181—and its prejudice analysis "unreasonably diluted" clearly established law because the court "failed to take into account the totality of the facts." Dkt. 58, p. 53. Petitioner contends that this Court should therefore "review the claim de novo." *Id.*, pp. 53-54.

Petitioner is incorrect: Although the Ninth Circuit has interpreted *Darden* as setting out the test for whether a prosecutor's improper comments so "infected the trial with unfairness" that the conviction violates the defendant's fair-trial right, *see Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000), habeas review—including application of the *Darden* analysis—is barred where that claim is procedurally defaulted. *See Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004).

Petitioner notes the "general unfairness of precluding federal review" where he attempted to discharge his attorney, "who then sat on his hands and failed to object to multiple instances of improper argument." Dkt. 60, p. 31. Even if this were a basis for habeas relief, the trial record does not bear out petitioner's claim that his attorney "sat on his hands." It instead shows him presenting a rigorous defense given the circumstances facing petitioner, impeaching prosecution witnesses, Exhibit 25, pp. 389, 397, and Exhibit 26, pp. 503-05, and making numerous successful

REPORT AND RECOMMENDATION - 40

1    objections throughout trial, Exhibit 24, p. 218, Exhibit 25, pp. 236, 252, 296, 307, 356, 380, and

2    Exhibit 26, pp. 570-74, including during closing argument, Exhibit 27, p. 660.

3                                    **EVIDENTIARY HEARING**

4

5           Perez-Martinez requests an evidentiary hearing on his ineffective assistance of counsel

6    claim if the Court decides that the record before it does not demonstrate that he received

7    ineffective assistance. Dkt. 58, pp. 56-57; Dkt. 60, p. 32. The Court should deny this request.

8           "[W]here the petitioner establishes a colorable claim for relief and has never been

9    afforded a state or federal hearing on this claim . . . a hearing is required if: "(1) [the defendant]

10   has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a

11   full and fair opportunity to develop those facts." *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir.

12   2005) (citations and footnote omitted).

13

14          The *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) opinion does not bar a hearing on

15   petitioner's ineffective assistance of counsel claim, because, as discussed above, that claim was

16   not adjudicated on the merits in state court. *See Dickens v. Ryan*, 740 F.3d 1302, 1320 (9th Cir.

17   2014) ("Pinholster does not bar Dickens from presenting evidence of his "new" IAC claim,

18   because the claim was not "adjudicated on the merits" by the Arizona courts.").

19

20          Here, petitioner has not alleged facts that, if proven, would entitle him to habeas relief.

21   Petitioner has introduced documentary evidence in support of his habeas petition. Dkt. 58,

22   Exhibits C-J. That evidence is considered above in addressing the merits of petitioner's

23   ineffective assistance of counsel argument. Petitioner does not allege the existence of any further

24   facts that an evidentiary hearing would yield and that would potentially affect the outcome of his

25

26

REPORT AND RECOMMENDATION - 41

1  petition. Therefore, the Court should find that petitioner's claims may be resolved on the existing

2  record and an evidentiary hearing is not necessary to decide this case.

3                          **CERTIFICATE OF APPEALABILITY**

4

5          A petitioner seeking post-conviction relief may appeal a district court's dismissal of his §

6  2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit

7  judge. A COA may issue only where a petitioner has made "a substantial showing of the denial

8  of a constitutional right." *See* 28 U.S.C. § 2253(c)(3).

9

10         Perez-Martinez should be granted a COA because "jurists [of reason] could conclude the

11 issues presented are adequate to deserve encouragement to proceed further." *Miller–El v.*

12 *Cockrell*, 537 U.S. 322, 327 (2003).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 42

**CONCLUSION**

Based on the foregoing, the undersigned recommends that Perez-Martinez's habeas petition be DENIED and his claims dismissed with prejudice. The undersigned recommends that the Court grant a certificate of appealability.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 7, 2019**, as noted in the caption.

Dated this 22nd day of May, 2019.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 43